IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSA SANDOVAL and ROSA L. FUENTES, | ) ) ) | |
| Plaintiffs, | ) ) | No. 12-cv-05545 |
| v. | ) ) | Judge Andrea R. Wood |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rosa Sandoval and Rosa Fuentes claim that they were injured in a car accident caused by the negligent driving of Victor Castro, who at the time of the accident was acting in the course of his official duties as a United States Army sergeant thereby exposing the United States to *respondeat superior* liability pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. Defendant United States of America disputes that Castro was acting within the scope of his employment and so the Court conducted an evidentiary hearing to determine that issue. For the reasons detailed below, the Court finds that Castro was not acting within the scope of his duties at the time of the accident and accordingly enters judgment for the United States.

### BACKGROUND

The parties do not dispute that on Sunday, October 11, 2009, Victor Castro was driving a United States Army vehicle when he collided with Plaintiffs' car on an exit ramp from Interstate 290 in Chicago. It is also undisputed that at the time, Castro was a recruiting sergeant in the United States Army assigned to the Army's West Addison Street office. Plaintiffs brought this action against the United States under 28 U.S.C. § 1346(b) and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., which provide that the United States shall be liable for tort claims in the

same manner and to the same extent as a private individual under like circumstances. The parties have agreed that the liability of the United States for Castro's actions is potentially determined by whether he was acting within the scope of his employment at the time of the accident. Following their presentation of evidence, that issue is now before the Court.

### *Testimony of Victor Castro*

Castro's deposition testimony was introduced at the evidentiary hearing by agreement of the parties. According to that testimony, in October 2009, Castro was a sergeant for the United States Army serving as a recruiter at the Army's West Addison Street office in Chicago. Army cars were available for recruiter use without the need for special permission. Recruiters were assigned cars to use, but a recruiter could take any available car as needed. Although keys for the cars were sometimes kept in a lock box, that practice was not normally used because of recruiters' need for cars in off hours.

On October 11, 2009, Castro picked up an Army Chevrolet Impala sometime in the morning. Castro planned to meet a potential prospect at a bowling alley; he frequently met prospects at that location and at other sporting events. He wanted to use an Army car instead of his own car because it looked more professional. Castro wore civilian clothes that day. He believed that it was within his discretion to decide whether to wear uniform dress or civilian clothes on any specific recruiting excursion.

Castro stayed at the bowling alley for four or five hours. He watched the prospect's bowling tournament in order to build rapport and trust with the prospect. He had two beers there. Castro knew that the consumption of alcohol while on duty was not permitted, but it was something all recruiters did occasionally. Castro considered the bowling alley to be "my little stomping grounds of where I used to get a lot of prospects" and saw friends there who were also

participating in the bowling tournament that day. Although he generally logged the coming week's appointments for his superiors, he did not believe that anyone in the Army was aware in advance that he planned the bowling alley trip.

On this occasion, Castro left the bowling alley to go eat and, after eating, was on his way back to the drop off the Army car when he got a phone call from a friend who had questions about joining the military. Castro had spoken to the friend about the subject three or four times before, and Castro decided to go to his location to answer his further questions. The friend was at another friend's house with five or six others "hanging out," and Castro thought it was a good opportunity to talk to the friend and the others at the same time. Castro was headed there when the accident occurred. He did not believe that the accident was the fault of Plaintiffs' car or the other car involved.

Castro was cited by police for the accident and his drivers' license was suspended for his refusal to take a breathalyzer test. A roadside blood alcohol level test determined his alcohol level to be .187%, and the reporting officer reported that he had slurred speech and bloodshot eyes.

### *Testimony of Tyrone Hayes*

Tyrone Hayes testified in person at the evidentiary hearing. Hayes testified that he was the United States Army first sergeant in charge of the West Addison Street recruiting station at the time of the accident. October 11, 2009 was the Sunday of a four-day weekend and Castro had not been scheduled to work that day. Recruiters were not authorized to wear any clothing other than Army-identifying outfits on recruiting activities. Hayes believed that the fact that Castro was not in an Army uniform at the time of the accident meant that he was not recruiting. A

3

service-wide Army rule prohibited consumption of alcohol on duty; that rule applied to recruiters as well.

*Testimony of Joel Knox*

The deposition testimony of Joel Knox was introduced at the hearing by agreement of the parties. Knox was a first sergeant and a team leader in the Addison Street recruiting station. Castro was on his recruiting team and reported to him. Knox himself reported to Hayes. Army-wide standards prohibited drinking eight hours before the start of a duty assignment.

## DISCUSSION

The Court has considered the evidence presented, including the witness testimony described above, the documentary evidence submitted by the parties, and their proposed findings. Based upon that evidence, the Court enters the conclusions of law and findings of fact below pursuant to Federal Rule of Civil Procedure 52.

*Conclusions of Law*

Whether a federal employee, including a military employee, is acting within the scope of his employment for Federal Tort Claims Act purposes is determined by state law. *See Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992). Illinois *respondeat superior* law thus applies here. Illinois courts look to the Second Restatement of Agency for guidance in determining whether an employee's acts fall within the scope of his employment. *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). Under the Restatement, an employee's conduct is within the scope of his employment if, but only if, (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master. *Id.* But the employee's conduct is not within the scope of his

4

employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. *Id.*

The Illinois Appellate Court has cited with approval Ohio precedent rejecting the premise that an employee who may be "prospecting" at any and all times necessarily provides a benefit to the employer that subjects it to *respondeat superior* liability for all of the employee's actions. *Nulle v. Krewer*, 872 N.E.2d 567, 570–71 (Ill. App. Ct. 2007) (citing *Hale v. Spitzer Dodge, Inc.*, No. 04AP–1379, 2006 WL 1781402 (Ohio App. June 29, 2006)). This Court concludes that, under Illinois law, the fact that the nature of an person's employment may allow him to benefit his employer even when off duty, without more, does not trigger *respondeat superior* liability as a matter of law. *See Lyons v. Adams*, 257 F. Supp. 2d 1125, 1141 (N.D. Ill. 2003) (discussing example of police officers who are "effectively always on duty" and citing cases). Whether an employee was acting within the scope of his employment is generally a question of fact. *See Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992–93 (Ill. 2007). Such is the case here.

*Findings of Fact*

Although Castro testified that he had the discretion to go on recruiting excursions without advance logging of his itinerary and without wearing a uniform that identified him as an Army representative, his testimony also indicated that such occasions were not the norm. The fact that his scheduled bowling alley visit departed from standard recruiting practice in both respects indicates that, at its inception, his October 11, 2009 outing was not substantially intended to be a recruiting event.

The evidence of Castro's actions on that day also indicates that any recruiting efforts were only incidental. He spent five hours at a bowling alley that was a regular "stomping grounds" where he knew several people other than the intended prospect. The nature and extent

5

of his contact with that prospect are not a matter of record, nor is the result of that contact. What is a matter of record is the result of a roadside blood alcohol test that indicated an alcohol level of .187%, plus a police officer's report that he had slurred speech and bloodshot eyes, along with his recognition that he was not supposed to drink while recruiting. This evidence is consistent with a conclusion that Castro devoted his efforts of the day to matters more social than business. Similarly, his destination at the time of the accident was a location where a friend was "hanging out" with other supposed potential prospects; no further elaboration on their potential is provided.

While Castro's travels on October 11, 2009 may have been motivated in part by the prospect of making contacts that served the Army's recruiting interests, that partial motivation does not trigger *respondeat superior* liability under Illinois law if it was too little a factor in his activities. The Court finds that Castro's travel was insufficiently motivated by service to the Army to be construed as within the scope of his employment.

## CONCLUSION

Because he was acting beyond the scope of his employment at the time of the accident, the United States cannot be liable for his actions. Judgment will accordingly be entered for the United States.

ENTERED:

Dated: June 9, 2017

_____
Andrea R. Wood
United States District Judge

6